**William Vance TURNER, Plaintiff,**

v.

**Officer Roderick SCHULTZ, Officer Michael Lavallee, Officer James Bond, Lieutenant David D. Armstrong, Lieutenant Fnu King, Captain M. Mooneyham, Assistant Warden Greco, Warden Joel H. Knowles, Lieutenant Rowe, Lieutenant K. Scott, Officer E. Wildergrube, Officer T. Martinez, Charolette Gutierrez, Captain Terry Hines, and other unknown agents of the Federal Bureau of Prisons, Defendants.**

No. 99–B–2232.

United States District Court, D. Colorado.

Feb. 15, 2001.

Eugene Sctt Baroway, Baroway, Porter & Thomas, Englewood, CO, for Plaintiff.

Roderick Schultz, pro se.

Robert M. Liechty, PC, Denver, CO, Paul J. Johns, U.S. Atty's Office, Denver, CO, for Roderick Schultz.

James Bond, pro se.

Josh Adam Marks, Tara Kim Weinman, Hall & Evans, Denver, CO, for Lieutenant King.

Gilbert Orlando Montoya, Jr., Denver, CO, for T. Martinez.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiff, William Vance Turner, brings this *Bivens* action alleging thirty-four claims for relief against fourteen current and former employees of the United States Bureau of Prisons (collectively "Defendants"). He alleges violations of his Fourth, Fifth, and Eighth Amendment rights under the United States Constitution. Defendants Scott, King, Mooneyham and Greco moved to dismiss. In response Mr. Turner amended his Complaint. These same four Defendants then moved to dismiss Mr. Turner's Amended Complaint. In response, Mr. Turner requested leave to file a Second Amended Complaint. I granted that motion. All Defendants except Armstrong and Knowles now move to dismiss Mr. Turner's Second Amended Complaint.

The motions are adequately briefed and oral argument would not materially aid their resolution. For the reasons set forth below, I deny as moot Defendants Scott, King, Mooneyham and Greco's Motion to Dismiss With Authorities; deny as moot Defendants Scott, King, Mooneyham and Greco's Motion to Dismiss With Authorities in Response to Plaintiff's Amended Complaint; and grant in part and deny in part Defendants' pending motions to dismiss. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

### I. Facts

The following allegations of fact are taken from Mr. Turner's Second Amended Complaint. Mr. Turner is a federal prisoner housed in protective custody at the federal prison in Florence, Colorado. Defendants are or were employees of the United States Bureau of Prisons assigned to Florence.

Mr. Turner alleges that Defendants were members of a conspiracy of guards and supervisors known as "the Cowboys." The Defendants allegedly conspired to physically assault prisoners that they felt were disciplinary problems and fabricate incident reports to make it appear as if the assaults were a response to violent behavior by the prisoners. Supervisors allegedly condoned the assaults and assisted the officers in covering up the true nature of the incidents. Defendant Hines, a Captain, allegedly told Defendants Lavallee and Armstrong that they had permission to act as a vigilante force, and that supervisory personnel would cover for them in that capacity. Prison officers who complained about the abuses where threatened to ensure their silence.

A number of guards were indicted for their actions as members of the Cowboys. Defendants Lavallee, Schultz, and Bond were indicted and charged with violations of 18 U.S.C. §§ 241, 242, & 2 for assaulting Mr. Turner and other inmates. *See* 00–CR–481–D. No disposition has been reached in that case. Defendant Armstrong was separately charged and pled guilty on July 13, 1999 to conspiring against the rights of citizens in violation of 18 U.S.C. § 241. He has not yet been sentenced. *See* 99–CR–190–D. At his change of plea hearing Mr. Armstrong admitted to being a member of a conspiracy with at least eleven members. Mr. Armstrong also admitted that the conspirators acted as vigilantes with the approval of prison supervisors. Defendant Gutierrez was also separately charged and pled guilty on July 21, 2000 to deprivation of civil rights under color of law in violation of 18 U.S.C. § 242. She has not yet been sentenced. *See* 00–CR–299–MW.

Mr. Turner alleges that on August 8, 1996 Defendants Schultz and Armstrong stabbed themselves and then asserted that

Mr. Turner caused their injuries. On this basis, Defendants Schultz, Armstrong, and Lavallee entered Mr. Turner's cell. All three kicked, hit, beat, slapped, and punched Mr. Turner numerous times. Defendants Gutierrez and Bond then entered the cell and hit Mr. Turner in the genitals a number of times, punched him, and choked him. Defendant Rowe told Mr. Turner than if he "didn't do the right thing and confess" repercussions would follow. He also deliberately tripped Mr. Turner while Mr. Turner was in full restraints, causing injury. Later in the day Defendants Martinez and Wildergrube alternately entered the cell, pushed Mr. Turner to his stomach while his hands were cuffed behind his back, and twisted Mr. Turner's thumbs. The assaults throughout the day were videotaped.

Mr. Turner asserts that Defendants Greco, Knowles, Mooneyham, King, and Hines failed to follow standard investigative procedures, including interviewing guards, disciplining protocol violations, documenting alleged injuries, and investigating inconsistencies in officers' stories. Allegedly these failures were part of pattern in which supervisors ignored inmate abuse, changed station assignments to allow the Cowboys to work together, and failed to provide proper discipline to abusive guards. Defendants King, Mooneyham, Greco, and Knowles each came on shift at some point during the August 8, 1996 assaults and took action to assist the guards.

Following the assaults, Defendants Schultz, Lavallee, Bond, Armstrong, King, and Scott then filed false reports with the United States Bureau of Prisons alleging that Mr. Turner assaulted Defendants Schultz, Lavallee, and Armstrong, and that his injuries were caused when he resisted officers' attempts to subdue him. Defendants Scott, Mooneyham, Greco, and Hines vouched for the false reports as true and accurate statements. All Defendants subjected Mr. Turner to physical and psychological abuse in the days following August 8, 1996, until he admitted to the crime. As a result of the false reports, Mr. Turner was indicted on two counts of assault with a deadly weapon in violation of 18 U.S.C. § 111(a) & (b). See 97–CR–177–D. The indictment was issued May 8, 1997. The case was dismissed July 28, 1998.

Mr. Turner brings the following claims for relief: (1) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Schultz; (2) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Schultz; (3) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Lavallee; (4) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Lavallee; (5) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Bond; (6) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Bond; (7) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Armstrong; (8) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Armstrong; (9) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Rowe; (10) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Rowe; (11) Failure to adequately supervise subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant King; (12) Failure to adequately train subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant King; (13) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Scott; (14) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution

against Defendant Scott; (15) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Wildergrube; (16) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Wildergrube; (17) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Martinez; (18) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Martinez; (19) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Gutierrez; (20) Cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution against Defendant Gutierrez; (21) Failure to adequately supervise subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant Mooneyham; (22) Failure to adequately train subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant Mooneyham; (23) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Mooneyham; (24) Failure to adequately supervise subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant Greco; (25) Failure to adequately train subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant Greco; (26) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Greco; (27) Failure to adequately supervise subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant Knowles; (28) No claim (the Complaint is mis-numbered); (29) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Knowles; (30) Failure to adequately supervise subordinates in violation of the Eighth Amendment to the United States

Constitution against Defendant King (this claim is a duplicate of Mr. Turner's eleventh claim); (31) Failure to adequately train subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant King; (32) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant King, (33) Failure to adequately supervise subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant Hines; (34) Failure to adequately train subordinates in violation of the Eighth Amendment to the United States Constitution against Defendant Hines; and (35) Malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendant Hines.

## II. Motion to Dismiss

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999).

Fed.R.Civ.P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or the merits of the case. Thus, one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed.R.Civ.P 8(a), which sets forth the requirements for pleading a claim in federal court. Fed. R.Civ.P 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it

"must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

Rule 12(b) provides that if matters "outside the pleading" are presented to and not excluded by the court, it should treat the motion to dismiss as one for summary judgment. *See* Rule 12(b); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Foremaster v. City of St. George*, 882 F.2d 1485, 1491 (10th Cir. 1989). Failure to convert a motion to dismiss so postured to a motion for summary judgment under Rule 56 is reversible error. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). However, if a plaintiff does not attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Additionally, failure to request that a document outside the complaint be excluded from consideration or that a 12(b)(6) motion be converted to one for summary judgement results in waiver. *See id.* Because the parties' motions and responses refer exclusively to those documents attached to the Complaint or central to the Plaintiffs' claims, and no party has requested that I convert this motion to dismiss to a motion for summary judgment, I address all issues under the 12(b)(6) standard.

## A. Statute of Limitations

■ All moving Defendants first argue that Mr. Turner's claims are barred by the applicable statute of limitations. I disagree. Mr. Turner alleges claims for violation of Constitutional rights by federal employees. Thus, his suit arises under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Martelon v. Temple*, 747 F.2d 1348, 1350–51 (10th Cir .1984), *cert. denied*, 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985) (noting that while 42 U.S.C. § 1983 claims are brought against state officers, equivalent actions against federal officials must be brought pursuant to *Bivens* ). Like an action brought under 42 U.S.C. § 1983, a *Bivens* action as a general matter "is subject to the statute of limitations of the general personal injury statute in the state where the action arose." *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir.1994). Colorado provides for a two-year statute of limitations for such actions. *See* Colo.Rev.Stat. § 13–80–102; *Blake v. Dickason*, 997 F.2d 749, 750–51 (10th Cir.1993) (applying § 13–80–102 to a § 1983 claim).

■ Generally in a *Bivens* action, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action," i.e., "when he should have discovered it through the exercise of reasonable diligence." *Industrial Constructors Corp.*, 15 F.3d at 969 (citations omitted). Defendants argue that the statute of limitation began to run on August 8, 1996. Thus, the period for filing would expire August 8, 1998. Mr. Turner did not file this action, however, until November 19, 1999. Therefore, they contend, Mr. Turner's suit was filed one year, three months, and eleven days after the putative statute of limitations expired.

Mr. Turner responds, however, that the statute of limitations was tolled while he was under indictment, as he was barred from filing a suit for money damages during the pendency of the criminal case. Mr. Turner argues that all of his claims

rest on the assumption that the assaults against him were not legally justified, as he was not the initial aggressor. Because he was charged with assaulting the officers, an act which, if true, would make attempts to restrain him permissible, any finding in his favor in the civil suit would call into question his guilt in the criminal case. Thus, he argues, had he brought his claim prior to July 28, 1998, it would have been dismissed under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

In *Heck,* a state prisoner was convicted of killing his wife. While his habeas corpus claim was on appeal, he filed a § 1983 suit against the prosecutor, alleging constitutional deprivations which led to his arrest and conviction. He asked only for money damages, and not for a reconsideration of his conviction or release from prison. The Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages "necessarily implying" the invalidity of a conviction or sentence that has not been previously invalidated is not cognizable under § 1983. *Id.* at 487, 114 S.Ct. 2364. *Heck* applies to *Bivens* actions. *See Crow v. Penry,* 102 F.3d 1086, 1087 (10th Cir.1996).

The Supreme Court did not directly address the situation of a plaintiff who brings his § 1983 case prior to the completion of his criminal case. However, Circuit courts have applied *Heck* to pending and dismissed charges. *See Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir.1999); *Washington v. Summerville,* 127 F.3d 552, 555–56 (7th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998); *Smith v. Holtz,* 87 F.3d 108, 112–13 (3d Cir.1996). The Tenth Circuit

agrees, holding that "Heck should apply to such situations when the concerns underlying Heck exist. Thus, Heck precludes § 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges. Such claims arise at the time the charges are dismissed." *Beck v. City of Muskogee Police Dept.,* 195 F.3d 553, 557 (10th Cir.1999) (citations omitted). *See also Heck,* 512 U.S. at 487 n. 8, 114 S.Ct. 2364 (suggesting that "if a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings.") (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

Therefore, Mr. Turner's claims accrued for statute of limitations purposes on July 28, 1998—the date the criminal charges against him were dismissed. *See id.; Wilkins v. Fries,* No. 00–7013, 2000 WL 763757 *2 n. 1 (10th Cir. June 13, 2000). The initiation of Mr. Turner's suit on November 19, 1999 was thus well within the two-year time frame.

### B. Prisoner Litigation Reform Act

■ Defendants Scott, King, Mooneyham, and Greco move to dismiss Mr. Turner's malicious prosecution claims against them as barred by the Prisoner Litigation Reform Act (PLRA). I agree.

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Therefore, although claims for mental and emotional distress can be brought pursuant to § 1983, and thus, under *Bivens,* § 1997e(e) provides that "such a suit cannot stand unless the plaintiff has suffered a physical injury in

addition to mental or emotional harms." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir.1999) (quotations omitted). Mr. Turner alleges that the prosecution caused him "severe emotional stress and loss of enjoyment of life," *see, e.g.*, Second Amended Complaint at ¶ 57, but does not assert any physical injury connected with the malicious prosecution. The claims, therefore, cannot stand.

Mr. Turner first responds that the PLRA does not apply because his case is not based on prison conditions. I disagree. Two subsections of the statute refer specifically to suits "with respect to prison conditions." *See* 42 U.S.C. § 1997e(a) ("No action shall be brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") (emphasis added); 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.") (emphasis added). However, the statute's provisions act independently. Although Congress restricted some clauses to prison condition suits, that provision does not apply in Mr. Turner's case. *See generally Archuleta v. Marshall*, No. 00–2033, 2000 WL 1005245 (10th Cir. July 20, 2000) (§ 1997e(e) applied to claim for use of excessive force although suit did not challenge prison conditions); *Hailey v. Kaiser*, No. 99–7046, 1999 WL 1009614 (10th Cir. Nov.8, 1999) (§ 1997e(e) applied to claim for deliberate indifference to safety or security although suit did not challenge prison conditions); *Flanery v. Wagner*, No. 98–3235, 1999 WL 314615 (10th Cir. May 19, 1999) (§ 1997e(e) applied to alleged Fourth Amendment viola-

tion not involving prison conditions); *Craig v. Eberly*, 164 F.3d 490 (10th Cir. 1998) (construing § 1997e(e) in accordance with the plain meaning of the section). I conclude that § 1997e(e) applies to Mr. Turner's malicious prosecution claims, although he does not challenge prison conditions.

Mr. Turner next argues that the requirements of the PLRA only apply to the suit as a whole, and not to each individual claim. Therefore, because he alleges that he suffered physical injury, he need not show a new injury connected to each individual claim. I again disagree.

The statute does not state whether a separate physical injury must be alleged for each claim for relief, or whether one injury suffices for the entire suit regardless of the number of claims brought. Mr. Turner cited, and I found, no case directly on point. Mr. Turner cites *Marrie v. Nickels*, 70 F.Supp.2d 1252, 1264 (D.Kan. 1999) to support his position that only one injury per case need be pled. In *Marrie*, United States military prisoners sued prison officials for alleged violations of the First, Fifth, and Eighth Amendments arising from living conditions, treatment by prison staff, and disciplinary measures. The Court concluded that one plaintiff's claim for compensatory damages based on alleged retaliation was barred by § 1997e(a), as he did not allege he suffered any physical injury as a result of the defendants' retaliation. The Court allowed that same plaintiff, however, to seek compensatory and punitive damages for sexual assault claims. The Court held that sexual assault was an adequate "physical injury" for purposes of § 1997e(e). Thus, *Marrie* required that a separate physical injury support each claim. *Marrie*, therefore, does not support Mr. Turner's interpretation of the statute.

*Marrie* is, however, consistent with Congressional intent. The legislative history of the PLRA did not explicitly state Congress's intent in adopting the statute. *See* Karen M. Klotz, Comment, *The Price of*

*Civil Rights: The Prison Litigation Reform Act's Attorney Fee–Cap Provision as a Violation of Equal Protection of the Laws,* 3 TEMP.L.REV. 759 (2000). However, the comments of legislators involved in passage of the Act show an intent to limit the number of prisoner-filed complaints, the number of meritless suits, and the excessive micro-management of the nation's prisons by the federal courts. *See id.;* Sharone Levy, Note, *Balancing Physical Abuse by the System Against Abuse of the System: Defining "Imminent Danger" Within the Prison Litigation Reform Act,* 6 IOWA L.REV. 361 (2000). It would be contrary to this stated intent to allow a prisoner to bring any number of claims to court on the back of one injury. Because Mr. Turner has failed to show a physical injury in connection with his malicious prosecution claims, I dismiss those claims against Defendants Scott, King, Mooneyham, and Greco.

## C. Qualified Immunity

■ All moving Defendants next argue that they are entitled to qualified immunity. Because each Defendant moves to dismiss different claims, I address each in turn.

"Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Greene v. Barrett,* 174 F.3d 1136, 1142 (10th Cir.1999). When a qualified immunity defense is raised in the context of Rule 12(b)(6), the review is limited to the pleadings. I must apply a heightened pleading standard, re-

quiring the complaint to contain "specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." *Breidenbach v. Bolish,* 126 F.3d 1288, 1293 (10th Cir.1997).

A two-step analysis is required before qualified immunity may be granted. First, I must examine whether the plaintiff has met his burden of "coming forward with sufficient facts to show that this defendant's actions violated a federal constitutional or statutory right." *Baptiste,* 147 F.3d at 1255. Only when the plaintiff has satisfied this initial inquiry do I ask whether the right was clearly established at the time of the alleged conduct at issue. *See id.* at 1255 n. 6; *see also County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."). In making the second determination, I look to see if there was "a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits ... found the law to be as the plaintiff maintains." *Murrell v. School Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1251 (10th Cir.1999) (citations and internal quotation marks omitted); *see also Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). However, for a right to be "clearly established," there need not be binding precedent on "all fours" with the current case; instead, the unlawfulness must have been apparent in light of pre-existing precedent. As the Supreme Court held in *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the right the official is alleged to have violated must have been "clearly

established" in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *See Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334 1337–38 (10th Cir. 2000).

### 1. Malicious Prosecution

■ All moving Defendants first argue that Mr. Turner's malicious prosecution claims must be dismissed because it is not clearly established that a prisoner can be seized within the meaning of the Fourth Amendment. I agree.

I have already determined that Mr. Turner's malicious prosecution claims cannot stand under the PLRA against Defendants Scott, King, Mooneyham, and Greco. However, Defendants Schultz, Lavallee, Bond, Wildergrube, Gutierrez, Martinez, Rowe, and Hines did not move to dismiss on the basis of the PLRA, although that rationale would apply to them as well. Qualified immunity is therefore a primary basis for dismissing the malicious prosecution claims against these eight Defendants. It also serves as an alternative basis for dismissing the malicious prosecution claims against Defendants Scott, King, Mooneyham, and Greco.

To maintain a malicious prosecution claim under § 1983, a plaintiff must demonstrate the elements of a common law claim and show that his Fourth Amendment right to be free from unreasonable search and seizure has been violated. *See Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996). The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. To state a claim under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred and that the seizure was "unreasonable." *Brower v.*

*County of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). "Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower*, 489 U.S. at 596, 109 S.Ct. 1378 (citations omitted).

Mr. Turner has cited, and I have found, no clearly established law that states that an already lawfully incarcerated prisoner is seized for Fourth Amendment purposes when he is charged with an additional crime. Because Mr. Turner was already effectively "seized," throughout the time period in question, it is doubtful whether the additional prosecution could result in an actionable seizure. *See Taylor v. Meacham*, 82 F.3d 1556, 1561 n. 5 (10th Cir.1996). Because the law is not clearly established, Defendants are entitled to a dismissal of Mr. Turner's malicious prosecution claims.

### 2. Defendants Scott, King, Mooneyham, and Greco

Defendants Scott, King, Mooneyham, and Greco next move to dismiss all remaining claims against them on the grounds that Mr. Turner has failed to met his burden of "coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right." *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252, 1255 (10th Cir.1998). I address each Defendant's assertions separately.

### a. Defendant Scott

Mr. Turner brings claims against Ms. Scott for malicious prosecution in violation of the Fourth Amendment, and cruel and unusual punishment in violation of the Eighth Amendment. As explained in part C.1., *supra*, Mr. Turner's malicious prosecution claim must be dismissed. Ms. Scott argues that there are insufficient allega-

tions of cruel and unusual punishment to allow that claim to proceed. I agree.

Ms. Scott is specifically named in only two paragraphs of the Second Amended Complaint. First, Mr. Turner sets out the factual allegations upon which his claims are based. He alleges that, "Intentionally false reports [claiming that Mr. Turner assaulted Defendants] were filed by Defendants Schultz, Lavallee, Bind, Armstrong, King and Scott. Defendant's [sic] Scott, Mooneyham, Greco, and Hines also participated in the conspiracy by vouching for the false reports as true and accurate statements. In fact, the Plaintiff never assaulted anyone nor did he resist in any way their apprehension of him." Second Amended Complaint at ¶ 23. Mr. Turner states no other factual allegations against Ms. Scott, and none of his attachments mention Ms. Scott.

Then, Mr. Turner states his claim against Ms. Scott. He states that "on or about August 8, 1996 this Defendant subjected the Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment by physically assaulting him without necessity, right, legal justification, or excuse ..." Second Amended Complaint at ¶ 93, p. 21. However, Mr. Turner fails to state factual allegations upon which a claim against Ms. Scott for assault may be made. Because Mr. Turner failed to "com[e] forward with sufficient facts to show that this defendant's actions violated a federal constitutional or statutory right," *Baptiste,* 147 F.3d at 1255, I dismiss the claim for cruel and unusual punishment against Ms. Scott.

### b. Defendants King, Mooneyham, and Greco

Mr. Turner brings identical claims against Defendants King, Mooneyham, and Greco for failure to adequately supervise subordinates in violation of the Eighth Amendment, failure to adequately train subordinates in violation of the Eighth Amendment, and malicious prosecution in violation of the Fourth Amendment. As explained in part C.1., *supra,* Mr. Turner's malicious prosecution claims are dismissed.

These three Defendants argue that Mr. Turner's claims for failure to supervise and train must be dismissed because he has failed to allege any personal participation in the complained—of activities, or any affirmative link between the supervisors' actions and any constitutional violations. I agree in part and disagree in part.

In order to state a claim for failure to supervise or failure to train, a plaintiff must show that a constitutional deprivation occurred and "an 'affirmative link' ... between the [constitutional] deprivation and [ ] the supervisor's ... 'exercise of control or direction, or his failure to supervise.'" *Meade v. Grubbs,* 841 F.2d 1512, 1527 (10th Cir.1988) (quoting *Specht v. Jensen,* 832 F.2d 1516, 1524 (10th Cir. 1987)). Supervisory liability cannot be predicated upon mere negligence. *See id.; accord Woodward v. City of Worland,* 977 F.2d 1392, 1399 (10th Cir.1992). The failure to train must be "complete," or "so reckless or grossly negligent that future misconduct is almost inevitable." *Id.* (citing *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 873–74 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982)). Additionally, a supervisor may be liable when he knew or should have known of subordinates' misconduct and failed to prevent future harm. *See Anthony v. Baker,* 767 F.2d 657, 666 (10th Cir.1985). Unless a supervisor has established or utilized an unconstitutional policy or custom, a plaintiff must show that the supervisory defendant breached a duty imposed by state or local law which caused the constitutional violation. *See Meade,* 841 F.2d at 1527 (citing *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986) (per curiam)).

Mr. Turner makes the following factual allegations against these three Defendants: Mr. King was acting Lieutenant on the night of August 8, 1996, and was aware of the assault. *See* Second Amended Complaint at 39. Despite this, Mr. King allegedly filed a false report on the events of the evening. *See id.* at 23. Each of these three Defendants came on

shift at some point during August 8, 1996, had direct control over the situation, and forwarded the incident reports despite knowledge of their falsity. *See id.* at ¶¶ 40–41. The three Defendants failed to properly investigate both the assault on Mr. Turner and assaults on other inmates. *See id.* at ¶¶ 24–25. Mr. Mooneyham and Mr. Greco were aware of complaints regarding the Cowboys, but refused to investigate. *See id.* at ¶¶ 42–52. Instead, they rearranged work assignments so that the Cowboys could continue to work together. *See id.* at ¶ 26. Finally, proper supervision by all three would have prevented the constitutional violations. *See id.* at ¶¶ 38, 53.

Considering Mr. Turner's allegations as true and in a light most favorable to him, he has properly alleged a failure to supervise claims, but not failure to train claims. The allegations of failure to investigate and improper work arrangements logically relate to the alleged assaults. *See id.* at ¶¶ 24–26, 42–52. Mr. Turner has therefore provided an affirmative link between the alleged assaults and these Defendants' failure to supervise. Fairly read, Mr. Turner has alleged reckless conduct and gross negligence. However, Mr. Turner pleads no allegations regarding officer training. He does not reference or cite any deficiencies in officer training. No link is plead between training and the alleged assaults. Finally, there is no allegation that the training was reckless or involved gross negligence. I therefore dismiss the failure to train claims against Defendants King, Mooneyham, and Greco, but not the failure to supervise claims.

### III. Summary of Remaining Claims

The following claims remain against the following Defendants: (2) Cruel and unusual punishment against Defendant Shultz; (4) Cruel and unusual punishment against Defendant Lavallee; (6) Cruel and unusual punishment against Defendant Bond; (7) Malicious prosecution against Defendant Armstrong; (8) Cruel and unusual punishment against Defendant Armstrong; (10) Cruel and unusual punishment against Defendant Rowe; (11) Failure to adequately supervise subordinates against Defendant King; (16) Cruel and unusual punishment against Defendant Wildergrube; (18) Cruel and unusual punishment against Defendant Martinez; (20) Cruel and unusual punishment against Defendant Gutierrez; (21) Failure to adequately supervise subordinates against Defendant Mooneyham; (24) Failure to adequately supervise subordinates against Defendant Greco; (27) Failure to adequately supervise subordinates against Defendant Knowles; (29) Malicious prosecution against Defendant Knowles; (33) Failure to adequately supervise subordinates against Defendant Hines; and (34) Failure to adequately train subordinates against Defendant Hines.

Accordingly, IT IS ORDERED that:

1. Defendants Scott, King, Mooneyham and Greco's Motion to Dismiss With Authorities is DENIED AS MOOT;

2. Defendants Scott, King, Mooneyham and Greco's Motion to Dismiss With Authorities in Response to Plaintiff's Amended Complaint is DENIED AS MOOT;

3. Defendants Scott, King, Mooneyham and Greco's Third Motion to Dismiss in Response to Plaintiff's Second Amended Complaint is GRANTED IN PART AND DENIED IN PART;

4. Defendants Schultz, Lavallee, Bond, Wildergrube, and Gutierrez's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART;

5. Defendant Martinez's Motion to Dismiss Complaint is GRANTED IN PART AND DENIED IN PART;

6. Defendants Rowe and Hines' motion to dismiss dated October 11, 2000 is GRANTED IN PART AND DENIED IN PART;

7. Plaintiff's first, third, fifth, ninth, thirteenth, fifteenth, seventeenth, nineteenth, twenty-third, twenty-sixth, thir-

ty-second, and thirty-fifth claims for malicious prosecution are DISMISSED.

8. Plaintiff's fourteenth claim for cruel and unusual punishment against Defendant Scott is DISMISSED;

9. Plaintiff's twelfth, twenty-second, twenty-fifth, and thirty-first claims for failure to train against Defendants King, Mooneyham, and Greco are DISMISSED;

10. Plaintiff's twenty-eighth claim for relief is DISMISSED for failing to state a claim upon which relief may be granted; and

11. Plaintiff's thirtieth claim for relief for failure to supervise subordinates against Defendant King is DISMISSED as duplicative of his eleventh claim for relief.